## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **ROBERT J. GILLIS AND** | ) | |
| **JUDITH GILLIS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:22-cv-11733** |
| | ) | |
| **FOSTER WHEELER, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT JOHN CRANE INC.'S
## <u>NOTICE OF REMOVAL OF ACTION</u>

Pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, Defendant John Crane Inc. ("JCI") hereby removes this action from the Superior Court of Middlesex County (the "Superior Court") to the United States District Court for the District of Massachusetts. JCI provides the following short and plain statement of the grounds for removal:

## I. <u>BACKGROUND FACTS</u>

1.     JCI was served with a summons and complaint on September 22, 2022, in connection with the civil action pending before the Superior Court, Case Number 22-3356. (Summons and Complaint attached collectively as **Exhibit A**.)

2.     As relevant here, Plaintiffs allege that Robert J. Gillis's ("Mr. Gillis") mesothelioma was caused by his work with and around a wide variety of asbestos-containing products, including JCI gasket and packing products, while serving in the U.S. Navy as a fireman

and boilerman aboard the *USS America* (CVA 66), a Kitty Hawk-class aircraft carrier, from September 1965-September 1967.  (Ex. A (Compl.) ¶54(a).)[1]

3.      Plaintiffs' causes of action against JCI sound in product liability based on failure to warn and failure to test. (Ex. A (Compl.) ¶64.)

4.      In sum, Plaintiff seeks to hold JCI liable for asbestos-containing products it sold to the Navy (gasket and packing material) without placing a warning on or with these products. Because of JCI's defense that it is immune from such claims under the government contractor defense, Plaintiffs' suit against JCI is removable to this Court.

## II. <u>U.S. NAVY SPECIFICATIONS GOVERNING GASKETS AND PACKING</u>

5.      At all times relevant to Plaintiffs' claims, the U.S. Navy observed a very particular process that had to be followed by product suppliers and manufacturers, like JCI, in order to sell products to the U.S. Navy for use on U.S. Navy ships. The U.S. Navy required that any product it purchased be qualified and approved before the purchase. Accordingly, to sell a product to the U.S. Navy, JCI would have had to go through certain steps to have the product placed on the U.S. Navy's Qualified Products List ("QPL"), a list designating products as eligible for bidding on naval contracts.

6.      At all times relevant to Plaintiffs' claims, to place a bid to sell a product to the U.S. Navy, JCI would first obtain the Navy's applicable Military Specification ("Mil-Spec"). Then, JCI would inform the Navy of its intention to bid on that specification.

---

[1] Gaskets are a cardboard-like material used at flanges between pipes or pipes and equipment to create a seal against leaking, pressure, and contamination. They come in sheets and precut. Packing, a rope-like material used for a similar purpose but in pump shafts and valve stems, came in various lengths or precut rings. Both types of material came impregnated with various binders, greases, and adhesives. Some contained asbestos.

7.      Once JCI had developed a product that conformed to the Navy's specifications, the Navy required JCI to test the product using an independent laboratory and submit those test results to the Navy. The Navy also required that the product be submitted to the Navy for the Navy's own testing. Only after the product had satisfied the required testing could it be placed on the Navy's QPL. Once a product won a bid, it could then be sold to the Navy.

### A.      *Specifications Regarding Gaskets Used on Navy Ships*

8.      At all times relevant to Plaintiffs' claims, any JCI compressed asbestos-containing sheet gasket material sold to the U.S. Navy (supplied in only very small quantities) would have conformed with reasonably precise military specifications covering every aspect of the composition, marking and labeling of the product, appearance, technical performance, and testing requirements.[2]

9.      During the time relevant to Plaintiffs' claims, compressed asbestos-containing sheet gasket material was governed by Military Specification MIL-A-17472B, attached as **Exhibit B**. This specification expressly required—based on decades of research by the Navy itself dating back to the first score of the twentieth century—the asbestos sheet to contain a minimum amount ("not less than 70 percent") of chrysotile asbestos.  (Ex. B ¶¶ 3.2.1, 3.4.)

10.     Included in this Mil-Spec was a requirement for all writings and markings to appear on the face of the product. Specifically, Paragraph 3.11, entitled "Branding," in MIL-A-17472B provided that the face of the gasket was to be "plainly marked" with the "manufacturer's name,

---

[2] The only JCI sheet gasket material ever appearing on the Navy's QPL—although not during the years at issue here—was style 2150.

brand identification, and symbol 2150." (Ex. B ¶ 3.11.)  No other writings or markings—including warnings of any kind—were permitted.

11.     Likewise, Paragraph 5.2 set forth requirements for all writings and markings that were permitted on shipping containers for gasket material. The documents incorporated by reference into Paragraph 5.2 did not include warnings for asbestos-containing products. Because the Navy assumed responsibility for promulgation of all warnings, and because one of the Navy's objectives was ensuring uniformity in labeling across the same products, the absence of any warning for asbestos incorporated into these paragraphs meant that such a warning was not permitted on the shipping containers for compressed asbestos sheet gasket material.

12.     Mil-Spec MIL-A-17472B likewise defined and delimited mandatory detailed and comprehensive testing procedures in Section 4.5. (Ex. B ¶ 4.5.) The Navy's qualification process for inclusion of asbestos-containing gaskets on the applicable QPL, which included these mandatory testing procedures, is reflected in paragraphs 3.1 and 4.2 of Mil-Spec MIL-A-17472B. (Ex. B ¶¶ 3.1, 4.2.)  The gaskets JCI sold to the Navy were required to—and did—conform to all of the applicable specifications for compressed asbestos sheet gasket material during the years at issue.

### B.     Specifications Regarding Packing Used on Navy Ships

13.     The level of oversight, control, testing, and detailed specifications described above for gasket material applied with equal force to the packing products sold by JCI to the Navy. Indeed, Mil-Specs for packing during the period relevant to Plaintiffs' claim contained precise language covering every aspect of the composition (expressly including asbestos), construction, size, performance testing, temperature rating, pressure rating, packaging, marking, and other

4

characteristics of the particular style of packing at issue. (*See* MIL-P-17303C, attached as **Exhibit C**).

14.     For example, MIL-P-17303 strictly governed the composition of the packing supplied to the Navy.  Paragraph 3.2 provided that the "composition" of the packing "shall conform to that of the sample submitted for qualification."  (Ex. C ¶ 3.2.) When it was promulgated by the Navy in 1952[3], MIL-P-17303 replaced what had been Navy Department Specification ("ND-SPEC") 33-P-25, which had been in place since 1931. The replacement of ND-SPECs with Mil-Specs was a function of a post-war movement away from branch-specific specifications to specifications that could be used across the various military branches.

15.     ND-SPEC 33-P-25 expressly required that all packing contain chrysotile asbestos. (Jan. 2, 1943, ND-SPEC 33-P-25c, attached as **Exhibit D**, at §D.)  As such, the packing supplied by JCI that was approved for use by the Navy under ND-SPEC 33-P-25 was required to contain asbestos.

16.     When MIL-P-17303C was promulgated, the products that had previously been approved by the Navy under ND-SPEC 33-P-25 were carried forward as the "approved" products under MIL-P-17303C.  This is reflected in the QPL for MIL-P-17303C, reflecting dates of approved product testing (in the 1930s) that tied back to ND-SPEC 33-P-25. (*See*, *e.g.*, Feb. 15, 1963, QPL-17303-24, attached as **Exhibit E**, at 1, identifying "EES"—the Navy's Engineering Experiment Station at Annapolis—test results from the 1930s.)

---

[3] Between 1952 and October 14, 1955 (the date of Exhibit C), MIL-P-17303 was amended in ways not relevant here.

17.     Thus, in promulgating MIL-P-17303C, the Navy required the continued use of the same asbestos-containing packings that had been required for decades under ND-SPEC 33-P-25. JCI was not free to use non-asbestos packing under MIL-P-17303C.  Before such a product could be used, it would have to be subjected to the testing required in the Mil-Spec. Only after such testing would the Navy then have decided whether to approve use of the product, a decision that was completely within the Navy's discretion.

18.     Further, MIL-P-17303C included requirements for all writings and markings (which were only permitted on containers and not on the spools themselves) that were to appear on the product.  (Ex. C ¶ 5.3.)  No other writings or markings (including warnings of any kind) were permitted.  Prior to July 1, 1980, these writings and markings never included an asbestos warning. For the same reasons described above for gaskets, warnings on packing containers were strictly controlled by the Navy and did not allow for an asbestos warning prior to July 1, 1980.

19.     Like MIL-A-17472B for gaskets, MIL-P-17303C set forth mandatory detailed and comprehensive testing procedures for packing in the paragraph entitled "4.4 Inspection and tests." (Ex. C ¶ 4.4.)

20.     At all times relevant to Plaintiffs' claims, JCI complied with all reasonably precise specifications, including product composition, labeling requirements, and testing protocols, set forth in the specifications applicable to the gasket and packing products it sold to the U.S. Navy.

21.     The U.S. Navy inspected goods supplied by JCI both at JCI's facilities and at the point of receipt by the Navy. These inspections specifically included review for compliance with marking and labeling requirements. The Navy never rejected or returned any shipment of products from JCI for failure to include an asbestos warning label. JCI never received any correspondence or other communication from the Navy instructing that JCI's shipments of products were required

6

to include such warnings. There was never a cessation of the business relationship between the Navy and JCI over failure to include asbestos warnings on products.

22.     At all times relevant to Plaintiffs' claims in this lawsuit, the United States Government, including the U.S. Navy—as one of the world's largest consumers of asbestos containing products—possessed knowledge regarding the dangers of asbestos that was superior to that of its equipment and product suppliers, including JCI.  In fact, the Navy's knowledge of asbestos hazards dates back to the early 1920s, before JCI was even approved to sell products to the Navy.

### III. FEDERAL OFFICER REMOVAL (28 U.S.C. § 1442(a)(1))

23.     Removal is proper under 28 U.S.C. § 1442(a)(1) when facts are disclosed establishing that: (1) the removing defendant is a person within the meaning of the statute; (2) it performed the complained of action at the direction of a federal officer and under color of federal office; (3) there is a causal nexus between the defendant's actions and the Plaintiffs' claims; and (4) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 123-135 (1989); *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 (1st Cir. 2022); *Papp v. Fore-Kast Sales Co.*, 824 F.3d 805, 812 (3rd Cir. 2016); 28 U.S.C. § 1442(a)(1).  JCI meets all four elements and is therefore entitled to remove this action pursuant to the federal officer removal statute.

24.     First, as a corporation, JCI is a "person" for purposes of 28 U.S.C. § 1442(a)(1). *Moore*, 25 F.4th at 34; *Papp,* 824 F.3d at 812.

25.     Second, to the extent JCI supplied asbestos-containing gasket and packing material, it was at the direction of a federal officer, the United States Government, and under color of federal office.  The materials at issue were supplied pursuant to military procurement contracts with the United States Government and in compliance with detailed design, testing, and labeling

7

specifications issued and approved by the Government. These specifications dictated the performance testing and material composition of the materials, including the requirement that such material contain asbestos fibers. (Ex. B (MIL-A-17472B) ¶¶ 3.1-3.4 (gaskets); Ex. C (MIL-P-17303C) ¶¶ 3.1, 3.9.2 (packing).)

26.     These specifications dictated the writings and markings required and allowed to be placed on the materials. (Ex. B (MIL-A-17472B) ¶¶ 3.11, 5.2 (gaskets); Ex. C (MIL-P-17303C) ¶ 5.3 (packing).)  The design, manufacture, testing, labeling, and shipment of such materials were subject to close, detailed, and ongoing supervision and control of the United States Government and its officers. The Government exercised discretion and approval authority over the products supplied by JCI. JCI complied with all of the United States Government's specifications. And, to the extent of any alleged hazards associated with gasket and packing materials, there were no dangers known to JCI that were not known to the United States. *Moore*, 25 F.4th at 37; *Leite v. Crane Co*., 749 F.3d 1117, 1120 (9th Cir. 2014); *Ruppel v. CBS* Corp, 701 F.3d 1176, 1186 (7th Cir. 2012); *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000); *accord Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (derivative sovereign immunity defense applies so long as the contractor can demonstrate that it complied with the Government's specifications regardless of the subject matter of the contract).

27.     JCI's supply of gasket and packing materials under the control, direction, specification, and supervision of the Government thus satisfies the "acting under" requirement, which, like federal officer removal generally, "is 'broad' and is to be 'liberally construe[d]' in favor of the entity seeking removal.'"  *Watson v. Philip Morris Cos., Inc*., 551 U.S. 142, 147 (2007); *Moore*, 25 F.4th at 34 n.3.

28.     For purposes of federal officer removal, federal appellate case law is clear that military contractors were "acting under a federal officer" in relation to the design, manufacture, and supply of equipment to the United States Government.  *See, e.g., Moore,* 25 F.4th at 34-35; *Papp*, 842 F.3d at 812 (*citing Ruppel,* 701 F.3d at 1184-1186). Indeed, JCI could not change the design or provide additional language—including warning labels—on the gaskets and packing without prior Government authorization. Moreover, not only did JCI's acquisition of Government approval for any design change require strict compliance with the Government's formal and detailed change process procedures, but the Government retained absolute authority at all times to accept, reject, or modify any aspect of a military government contractor's requested change proposal.  Similarly, JCI could not change the testing protocol that the gasket and packing material was subjected to because, pursuant to the clear language of the specifications, the testing was to be conducted in facilities approved by the Government and done in accordance with the Government's protocol.

29.     Third, there is a causal nexus between JCI's alleged actions in supplying the gaskets and packing and Plaintiffs' claim that his mesothelioma was caused by the asbestos-containing gaskets and packing JCI supplied to the U.S. Navy pursuant to and in strict adherence to applicable government specifications. In assessing whether a causal nexus exists, the Court credits the defendant's theory of the case. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *Moore* 25 F. 4th at 36-38; *Leite v. Crane Co.,* 749 F.3d 1117, 1124 (9th Cir. 2014); *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2nd Cir. 2008).

30.     For this requirement, the federal officer removal has been broadened to include not only causally connected actions under color of federal officer, but also to include *connected* or *associated* acts. *Moore,* 25 F.4th at 35 n.4; *Papp*, 842 F.3d at 813.  Here, a nexus exists because

the very acts that form the basis of Plaintiffs' claims—JCI's supply of asbestos-containing products to the U.S. Navy for use on Navy ships and its alleged failure to warn about asbestos hazards—are acts that JCI performed in accordance and compliance with directions from the Navy. *Moore*, 25 F.4th at 37-38; *Ruppel,* 701 F.3d at 1184-1186; *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d 387, 396-397 (5th Cir. 1998) (government contractor who supplied dangerous herbicide Government used to conduct war could remove product liability actions pursuant to federal officer removal statute).

31.     Fourth, JCI asserts a colorable federal defense, namely the "government contractor" defense set forth in *Boyle v. United Technologies, Inc*., 487 U.S. 500 (1988) and its progeny.  The government contractor defense applies to Plaintiffs' failure-to-warn claims, failure to test, and any design defect claims in that: (1) the Government approved specifications for the design and labeling of gaskets and packing; (2) JCI complied with these specifications, and (3) there were no health hazards associated with asbestos generally, or asbestos-containing gaskets and packing material specifically, of which JCI was aware and the Government was not.  *See Boyle*, 487 U.S. at 512-513; *Moore*, 25 F.4th at 36-38; *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Miller*, 275 F.3d at 423; *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438-39 (5th Cir. 2000); *accord Sawyer*, 860 F.3d at 259; *Ruppel,* 701 F.3d at 1188; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995). *See also United States.  O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 57 (D. Mass. 2008) ("the Navy's knowledge of the dangers of asbestos on board its ships was far more advanced than anything that would have been known to a contractor").

32.     JCI also is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W. A. Ross Constr.*

*Co*., 309 U.S. 18, 20-21 (1940), clarified most recently by *Campbell-Ewald Co.*, *supra*.  In *Yearsley*, the Court established that a government contractor acting at the direction and authorization of a government officer is immune from suit based on performance of the government contract.  Thus, to establish that defense, JCI ultimately will have to prove that it supplied its asbestos-containing products to the Navy as authorized and directed by the Government.  *Campbell-Ewald Co*., 136 S. Ct. at 666; *Yearsley*, 309 U.S. at 20-21.  *Yearsley* is satisfied here because the acts complained of were performed at the direction of government officers acting under government authorization, and if the Government had performed those acts directly, it would be immune from suit.

33.     At this stage, to assert a colorable defense, a defendant is required only to identify facts which, viewed in the light most favorable to the defendant, would establish a defense under *Boyle*, *Moore*, *Ruppel*, or *Yearsley/Campbell-Ewald* at trial, and "need not win his case before he can have it removed."  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).  "Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection."  *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999).  To be "colorable," the defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.  *Willingham*, 395 U.S. at 407.  Under identified facts similar to those here, federal courts consistently have denied motions to remand state law claims removed under the government contractor defense.  *See Moore*, 25 F.4th at 32; *Papp*, 842 F.3d at 809; *Ruppel,* 701 F.3d at 1178.

34.     Pursuant to 28 U.S.C. § 1446(b)(1), JCI has filed a notice of removal within 30 days of service of the summons upon JCI.

## IV. <u>JURISDICTION</u>

35.     Removal of this action is proper under 28 U.S.C. § 1442.  Consistent with the short and plain statement of the law and facts set forth above, the federal district courts have original jurisdiction over the subject matter of this suit under 28 U.S.C. § 1442(a)(1) because JCI was acting under an officer or agency of the United States Government in relation to any claims asserted against JCI and JCI can state at least a colorable defense under federal law to any such claims.  *See Moore*, 25 F.4th at 36-38; *Papp*, 842 F.3d at 809.

36.     Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.

37.     The Superior Court is located within the judicial district overseen by the United States District Court for the District of Massachusetts, making venue proper. *See* 28 U.S.C. §§ 1332(a)(3) and 1441(a).

## V. <u>PROCEDURAL COMPLIANCE</u>

38.     JCI is not required to obtain the consent of any other defendants to remove this action in its entirety under section 1442(a)(1).  *Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin Agency*, 2005 U.S. Dist. LEXIS 234,* 6, 2005 WL 44524 (E.D. Pa. 2005) (*citing Akin v. Ashland Chem. Co.*, 156 F.3d 1030,1034 (10th Cir. 1998); *Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992); *Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.*, 644 F.2d 1310, 1314-15 (9th Cir. 1981); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960); *see also* 14C Wright, Miller & Cooper, Federal Practice and Procedure § 3727, at 166-68 (3d ed. 1998)).

39.     As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon JCI are being filed and are attached here as **Exhibit F**.

12

40.     Pursuant to 28 U.S.C. § 1446(d), JCI is filing written notice of this Notice of Removal with the Superior Court concurrently with the filing of this Notice of Removal and will serve the same on counsel of record.  A copy of the Notice of Filing Notice of Removal (without exhibits) is attached as **Exhibit G**.

41.     A court cannot remand a properly removed case for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Prods., Inc. v. Hermansdorfer* (1976) 423 U.S. 336.  The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is not narrow nor limited, and it should not be frustrated by a narrow or grudging interpretation.  *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

42.     If Plaintiff files a motion to remand this action, JCI respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

43.     JCI reserves all of its defenses.

**WHEREFORE**, Defendant JCI requests that this Court assume jurisdiction over this matter on removal from the Middlesex County Superior Court.

Dated: October 12, 2022

Respectfully submitted,
John Crane Inc.
By its attorneys,

*/s/ Jordan L. Schwindt*
John B. Manning, BBO #559707
Jonathan F. Tabasky, BBO #631387
Jordan L. Schwindt, BBO #694333
MANNING GROSS + MASSENBURG LLP
125 High Street, 6th Floor
Oliver Street Tower
Boston, MA 02110-3536
Telephone: (617) 670-8800
Facsimile: (617) 670-8801
Email: jtabasky@mgmlaw.com
           jschwindt@mgmlaw.com


**CERTIFICATE OF SERVICE**

I, Jordan L. Schwindt, counsel for Defendant, John Crane Inc., hereby certify that a true and accurate copy of the above document was filed electronically on the Court's CM/ECF system on October 12, 2022. Notice of this filing will be sent to all counsel of record via the Court's ECF system.

*/s/ Jordan L. Schwindt*
Jordan L. Schwindt