# EXHIBIT A



**CT Corporation**
**Service of Process Notification**
09/22/2022
CT Log Number 542354662

## Service of Process Transmittal Summary

**TO:**    John Crane Asbestos .
        SMITHS GROUP
        6400 OAKTON ST
        MORTON GROVE, IL 60053-2725

**RE:**    **Process Served in Massachusetts**

**FOR:**   John Crane Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: ROBERT J. GILLIS and JUDITH GILLIS // To: John Crane Inc. |
| **CASE #:** | 223356 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **PROCESS SERVED ON:** | C T Corporation System, Boston, MA |
| **DATE/METHOD OF SERVICE:** | By Traceable Mail on 09/22/2022 |
| **JURISDICTION SERVED:** | Massachusetts |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/22/2022, Expected Purge Date: 09/27/2022 |
| | Image SOP |
| | Email Notification,  John Crane Asbestos .  legal-service@johncrane.com |
| | Email Notification,  Christopher S. Doherty  cdoherty@mgmlaw.com |
| | Email Notification,  Christopher Doherty  CDoherty@mgmlaw.com |
| | Email Notification,  Callie Banks  cdougherty@mgmlaw.com |
| | Email Notification,  Lindsay Whalen  lwhalen@mgmlaw.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 155 Federal Street |
| | Suite 700 |
| | Boston, MA 02110 |
| | 866-331-2303 |
| | CentralTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

CERTIFIED MAIL

Shepard
160 Fede
13th Floor
Boston, MA 02110

7022 0410 0002 0972 8617

UNITED STATES POSTAGE
PITNEY BOWES

Boston PSDC 03205
TUE 20 SEP 2022

John Crane, Inc.
CT Corporation System
155 Federal Street
Suite 700
Boston, MA 02110



# SHEPARD LAW
### PERSONAL INJURY & TOXIC TORT LITIGATION

September 20, 2022

**VIA CERTIFIED MAIL, RRR**
John Crane, Inc.
CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

Re:    <u>Gillis et al., v. Foster Wheeler LLC et al, CA No. 22-3356</u>

Dear Sir/Madam:

Please be advised, John Crane, Inc. is a defendant in the above-referenced lawsuit originally filed in Middlesex Superior Court in Woburn Massachusetts on September 14, 2022.

Service of process under the Massachusetts Rules of Civil Procedure is made pursuant to Mass. Gen. Laws ch. 223A, § 3 (the Massachusetts long-arm statute) by mailing a copy of the enclosed summons and complaint by certified mail, return receipt requested. The signed return receipt will acknowledge service of this summons and complaint to you.

Enclosed is a copy of the Plaintiffs' Complaint and Summons. Plaintiffs' Complaint is also posted on File & ServeXpress, the electronic docketing system for this litigation in Massachusetts. If you require information regarding access to the electronic docketing system, please instruct your counsel to notify our office, and we will provide a copy of Amended Pre-Trial Order No. 9, which outlines the use of the system.

Kindly refer the enclosed materials to your attorney and/or insurance carrier as soon as possible. Thank you.

Very truly yours,

Michael C. Shepard

MCS/TNC

# Commonwealth of Massachusetts

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. __22-3356_____

Robert J. Gillis and
Judith Gillis _____ , PLAINTIFF(S),

V.

_John Crane, Inc._____ , DEFENDANT(S)

### SUMMONS

THIS SUMMONS IS DIRECTED TO _John Crane, Inc._____ . (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you.  A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the ___Middlesex Superior_____ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.    **You must respond to this lawsuit in writing within 20 days.**  If you do not respond, the court may decide
the case against you and award the Plaintiff everything asked for in the complaint.  You will also lose the
opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect
to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an
extension of time in writing from the Court.**

2.    **How to Respond.**  To respond to this lawsuit, you must file a written response with the court **and** mail
a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:

a.   Filing your **signed original** response with the Clerk's Office for Civil Business, _____ Court,
_200 Trade Center, 2nd Floor_ (address), by mail or in person, **AND**  _Middlesex_

b.   _Woburn, MA 01801_ Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
address: _____
_Shepard Law, P.C., 160 Federal Street, Boston, MA 02110_

3.    **What to include in your response.**  An **"Answer"** is one type of response to a Complaint.  Your Answer
must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
use them in court.  If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
based on the same facts or transaction described in the Complaint, then you must include those claims
in your Answer.  Otherwise, you may lose your right to sue the Plaintiff about anything related to this
lawsuit.  If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
Answer or in a written demand for a jury trial that you must send to the other side and file with the
court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a
**"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient.  A Motion
to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
described in the rules of the Court in which the complaint was filed, available at
www.mass.gov/courts/case-legal-res/rules of court.

4.  **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.  **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi Brieger, Chief Justice on _____, 20 ___.


_____

Michael A. Sullivan
Clerk-Magistrate


Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.


## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ September 19 , 20 _22_ , I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____
by certified mail, return receipt requested, pursuant to Mass. Gen. Laws ch. 223A, § 3
_____
(the Massachusetts long-arm statute)

Dated: _____ September 19 , 20 _22_          Signature: _____


N.B.     **TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

| |
|---|
| September 19 20 22 |

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

_____ X

ROBERT J. GILLIS and JUDITH GILLIS,

CIVIL ACTION NO. 22-3356

Plaintiffs,

v.

FOSTER WHEELER, LLC, survivor to a merger
    with Foster Wheeler Corporation
AIR & LIQUID SYSTEMS CORPORATION, as
    successor by merger to Buffalo Pumps, Inc.
ALFA LAVAL INC.
AMETEK, INC., individually and as successor to
    Schutte & Koerting
AURORA PUMP COMPANY
BLACKMER
BNS CO.
BOSTON PROPERTIES, INC.
BOSTON UNIVERSITY
BURNHAM LLC
CAMERON INTERNATIONAL
    CORPORATION, f/k/a Cooper Cameron
    Corporation
CARRIER CORPORATION
CLA-VAL CO.
CLEAVER-BROOKS, INC.
CLIFTON ASSOCIATES, INC., f/k/a Johnson
    Asbestos Corporation
CROSBY VALVE, LLC
DCO LLC, f/k/a Dana Companies, LLC
ELECTROLUX HOME PRODUCTS, INC.,
    individually and as successor to Copes
    Vulcan
ELLIOTT COMPANY
EMERSON-SWAN, INC.
FMC CORPORATION, on behalf of its former
    Chicago Pump, Peerless Pump and Northern
    Pump Businesses
GENERAL ELECTRIC COMPANY
GENERAL INSULATION COMPANY
GLAXOSMITHKLINE LLC

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

SEP 14 2022

CLERK

GSK CONSUMER HEALTH, INC.
HARVARD UNIVERSITY
HP HOOD, individually and as successor-in-
    interest to Brigham's Ice Cream Inc.
IMO INDUSTRIES, INC.
JOHN CRANE, INC.
JOY GLOBAL UNDERGROUND MINING LLC
    f/k/a Joy Technologies LLC
MASS GENERAL BRIGHAM
    INCORPORATED, individually and as
    successor-in-interest to The Massachusetts
    General Hospital
MASSACHUSETTS INSTITUTE OF
    TECHNOLOGY
MASSACHUSETTS PORT AUTHORITY
MEMORIAL SLOAN KETTERING CANCER
    CENTER
MERCK & CO., INC.
MERCK SHARP & DOHME LLC
NEW ENGLAND INSULATION COMPANY
PARAMOUNT GLOBAL, f/k/a ViacomCBS Inc.,
    f/k/a CBS Corporation, a Delaware
    corporation, f/k/a/ Viacom Inc., successor by
    merger to CBS Corporation, a Pennsylvania
    corporation, f/k/a Westinghouse Electric
    Corporation
PARKER-HANNIFIN CORPORATION,
    successor to Denison Hydraulics Inc. f/k/a
    Denison Engineering
REDCO CORPORATION
ROBERTSHAW CONTROLS COMPANY,
    individually and as successor-in-interest to
    Fulton Sylphon Company
THE MARLEY-WYLAIN COMPANY
THE WILLIAM POWELL COMPANY
UNIVERSITY OF MASSACHUSETTS
UNION CARBIDE CORPORATION
VALVES AND CONTROLS US, INC., f/k/a Weir
    Valves & Controls USA, Inc., f/k/a Atwood
    & Morrill Co., Inc.
VELAN VALVE CORPORATION
WARREN PUMPS LLC
WILO USA LLC, individually and as successor-
    in-interest to Weil Pump Company, Inc.
YORK INTERNATIONAL CORPORATION

2

Defendants.

_____X

## PARTY PLAINTIFFS

1.        Plaintiffs ROBERT J. GILLIS and JUDITH GILLIS reside at 32 Stonegate Lane, Hanover, MA 02339.

## PARTY DEFENDANTS

2.        FOSTER WHEELER, LLC, survivor to a merger with Foster Wheeler Corporation, is a corporation organized under the law of Delaware with its principal place of business in Pennsylvania, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors.

3.        AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to Buffalo Pumps, Inc., is a corporation organized under the law of Michigan with its principal place of business in Michigan, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

4.        ALFA LAVAL INC. is a Pennsylvania corporation with its principal place of business in Pennsylvania and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

5.        AMETEK, INC., individually and as successor to Schutte & Koerting, is a Massachusetts Corporation with its principle place of business at 1100 Cassatt Road, Berwyn, PA 19312, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

6.        AURORA PUMP COMPANY is a New York corporation with its principal place of business located in North Carolina, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

3

7.     BLACKMER is a corporation organized under the law of Delaware with its principle place of business in Michigan, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

8.     BNS CO. is a corporation organized under the law of Delaware and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

9.     BOSTON PROPERTIES, INC. is a corporation organized under the law of Delaware with a principal place of business location in Massachusetts, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

10.    BOSTON UNIVERSITY is a corporation organized under the law of Delaware with a principal place of business location in Massachusetts, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

11.    BURNHAM LLC is a corporation organized under the law of Delaware with a principal place of business location in Pennsylvania, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

12.    CAMERON INTERNATIONAL CORPORATION, f/k/a Cooper Cameron Corporation, is a Delaware Corporation with its principle place of business in Houston, Texas and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

13.    CARRIER CORPORATION is a Delaware Corporation with its principle place of

4

business at 13995 Pasteur Blvd, Palm Beach Gardens, FL, 33418, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

14.    CLA-VAL CO. is a California Corporation with its principle place of business at 1701 Placentia Ave, Costa Mesa, CA 92627, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

15.    CLEAVER-BROOKS, INC. is a Delaware corporation with its principal place of business in Georgia and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

16.    CLIFTON ASSOCIATES, INC., f/k/a Johnson Asbestos Corporation, is a Massachusetts Corporation with its principle place of business in West Springfield, MA and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

17.    CROSBY VALVE, LLC is a Nevada Corporation with its principle place of business in McKinney, Texas and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

18.    DCO LLC, f/k/a Dana Companies, LLC with its principal place of business at 40 Burton Hills Blvd, Suite 200, Nashville, TN 37215, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessors.

19.    ELECTROLUX HOME PRODUCTS, INC., individually and as successor to Copes-Vulcan, is a corporation organized under the law of Delaware with its principal place of

5

business in North Carolina, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors.

20.     ELLIOTT COMPANY is a Pennsylvania corporation with its principle place of business in the state of Pennsylvania.  ELLIOT COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

21.     EMERSON-SWAN, INC. is a Massachusetts corporation with its principle place of business in the state of Massachusetts.  EMERSON-SWAN, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

22.     FMC CORPORATION, on behalf of its former Chicago Pump, Peerless Pump and Northern Pump Businesses on behalf of its former Stearns Business is a Delaware Corporation with its principal place of business in Philadelphia, Pennsylvania, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

23.     GENERAL ELECTRIC COMPANY is a New York Corporation with its principal place of business in Massachusetts and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

24.     GENERAL INSULATION COMPANY is a Massachusetts corporation with its principle place of business in the state of Massachusetts.  GENERAL INSULATION COMPANY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

25.     GLAXOSMITHKLINE LLC is a Delaware corporation with its principle place of business in the state of Pennsylvania.  GLAXOSMITHKLINE LLC has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

6

26.     GSK CONSUMER HEALTH, INC. is a New Jersey corporation with its principle place of business in the state of New Jersey.  GSK CONSUMER HEALTH, INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

27.     HARVARD UNIVERSITY is a Delaware corporation with its principle place of business in the state of Massachusetts.  HARVARD UNIVERSITY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

28.     HP HOOD, individually and as successor-in-interest to Brigham's Ice Cream Inc., is a Delaware corporation with its principle place of business in the state of Massachusetts.  HP HOOD, individually and as successor-in-interest to Brigham's Ice Cream Inc. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

29.     IMO INDUSTRIES, INC. is a New York corporation with its principal place of business located in North Carolina, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

30.     JOHN CRANE, INC. is a corporation organized under the law of Delaware with its principal place of business in Illinois, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

31.     JOY GLOBAL UNDERGROUND MINING LLC f/k/a Joy Technologies LLC is a Delaware corporation with its principle place of business in the state of Pennsylvania.  JOY GLOBAL UNDERGROUND MINING LLC f/k/a Joy Technologies LLC has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

32.     MASS GENERAL BRIGHAM INCORPORATED, individually and as successor-in-interest to The Massachusetts General Hospital is a Massachusetts corporation with its principle place of business in the state of Massachusetts.    MASS GENERAL BRIGHAM

7

INCORPORATED, individually and as successor-in-interest to The Massachusetts General Hospital has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

33.     MASSACHUSETTS INSTITUTE OF TECHNOLOGY is a Massachusetts corporation with its principle place of business in the state of Massachusetts. MASSACHUSETTS INSTITUTE OF TECHNOLOGY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

34.     MASSACHUSETTS PORT AUTHORITY is a Massachusetts corporation with its principle place of business in the state of Massachusetts.   MASSACHUSETTS PORT AUTHORITY has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

35.     MEMORIAL SLOAN KETTERING CANCER CENTER is a New York corporation with its principle place of business in the state of New York.  MEMORIAL SLOAN KETTERING CANCER CENTER has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

36.     MERCK & CO., INC. is a New Jersey corporation with its principle place of business in the state of New Jersey.  MERCK & CO., INC. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

37.     MERCK SHARP & DOHME LLC is a New Jersey corporation with its principle place of business in the state of New Jersey.  MERCK SHARP & DOHME LLC has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

38.     NEW ENGLAND INSULATION COMPANY is a corporation organized under the law of Massachusetts with its principal place of business in Massachusetts, and upon

information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

39.     PARAMOUNT GLOBAL, f/k/a ViacomCBS Inc., f/k/a CBS Corporation, a Delaware corporation, f/k/a/ Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, is a Delaware corporation with its principle place of business in the state of New York, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

40.     PARKER-HANNIFIN CORPORATION, successor to Denison Hydraulics Inc. f/k/a Denison Engineering, is a Ohio corporation with its principle place of business in the state of Ohio, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

41.     REDCO CORPORATION is a Delaware corporation with its principle place of business in the state of New York, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

42.     ROBERTSHAW CONTROLS COMPANY, individually and as successor-in-interest to Fulton Sylphon Company, is a Delaware corporation with its principle place of business in the state of Virginia, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

43.     THE MARLEY-WYLAIN COMPANY is a Delaware corporation with its principle place of business in the state of Indiana, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

9

44.     THE WILLIAM POWELL COMPANY is an Ohio corporation with its principle place of business in the state of Ohio, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

45.     UNION CARBIDE CORPORATION is a New York corporation with its principle place of business in the state of Texas, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

46.     UNIVERSITY OF MASSACHUSETTS is a Massachusetts corporation with its principle place of business in the state of Massachusetts, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

47.     VALVES AND CONTROLS US, INC., f/k/a Weir Valves & Controls USA, Inc., f/k/a Atwood & Morrill Co., Inc., is a Texas corporation with its principle place of business in the state of Texas, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessor.

48.     VELAN VALVE CORPORATION is a New York corporation with its principle place of business in the state of Vermont.  VELAN VALVE CORPORATION has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

49.     WARREN PUMPS LLC is a corporation organized under the law of Delaware with its principal place of business in Massachusetts, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessors and subsidiaries.

50.     WILO USA LLC, individually and as successor-in-interest to Weil Pump Company, Inc., is a Delaware corporation with its principle place of business in the state of

Wisconsin. WILO USA LLC, individually and as successor-in-interest to Weil Pump Company, Inc. has conducted business in and has derived substantial revenue from the Commonwealth of Massachusetts.

51.     YORK INTERNATIONAL CORPORATION is a corporation organized under the law of Delaware with its principal place of business in Wisconsin, and upon information and belief has conducted business in the Commonwealth of Massachusetts itself and through its subsidiaries and predecessors.

52.     As used in this Complaint, the terms "defendant," "defendants" or "defendant corporations" shall include the party defendants identified in paragraphs 2 through 45, and their predecessors and successors, which shall include, but is not limited to, any person, corporation, company or business entity which formed part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation or other entity, or into which any party defendant was merged, consolidated or reorganized; whose assets, stock, property, employees, customers, good will, products or product line was acquired by or from any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by or from any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

53.     The Plaintiffs' cause of action arises from the defendant: (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

11

## FACTUAL BACKGROUND

54.     Plaintiff ROBERT J. GILLIS is alleged to have been exposed to asbestos dust and fibers during the course of his life as follows:

   a.  From approximately September 1965 through September 1967, Plaintiff ROBERT J. GILLIS was exposed to asbestos while serving in the US NAVY aboard the USS AMERCIA (CVA-66) as a fireman/boiler man from asbestos-containing products and/or equipment and/or materials including, but not limited to, boilers, valves, pumps, compressors, gaskets, packing, insulation, and other such products, materials and equipment; and,

   b.  During approximately 1967 to 1968, Plaintiff ROBERT J. GILLIS was exposed to asbestos through his work as an apprentice for an HVAC contractor in Massachusetts from the removal, installation, repair and/or service of boilers and other associated asbestos-containing products and equipment; and,

   c.  From approximately 1968 through 2008, Plaintiff ROBERT J. GILLIS worked for Harris Environmental Systems as a pipefitter and HVAC worker installing and/or building "environmental rooms," "dry rooms," and "clean rooms"; during a portion of this employment, at certain sites, Plaintiff ROBERT J. GILLIS was exposed to asbestos from various asbestos-containing products associated with his work and/or the work of others in his vicinity.

55.     During the time periods set forth in the preceding paragraphs, Plaintiff ROBERT J. GILLIS regularly and frequently was exposed to, inhaled, and breathed in respirable asbestos fibers, dust from finished and/or unfinished asbestos products, materials, machinery and equipment which were mined, milled, manufactured, fabricated, contracted, branded, rebranded,

12

supplied, distributed, used, worked with, disturbed, modified, installed, maintained, repaired, removed, and specified by, and/or which occurred or originated at or on the premises owned, operated, controlled, supervised, maintained, or were otherwise the responsibility of the Defendants.

56.    The asbestos and asbestos-containing products, materials, machinery, and/or equipment to which Plaintiff ROBERT J. GILLIS was exposed were mined, milled, manufactured, fabricated, contracted, supplied, distributed, sold, purchased, and/or used by the Defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the Defendants.

57.    The asbestos and asbestos-containing products, materials, machinery, and/or equipment to which Plaintiff ROBERT J. GILLIS was exposed were used at worksites, locations, premises, and facilities owned, operated, maintained and controlled by the Defendant corporations, and at the direction, control, and supervision of the Defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the Defendants.

58.    At all times pertinent hereto, the Defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, contracting, supplying, distributing, and/or selling asbestos and/or asbestos-containing products and/or equipment.

59.    As a direct and proximate result of breathing in and being exposed to asbestos dust and fibers from products, materials, machinery, and equipment mined, milled, manufactured, tested, furnished, packaged, contracted, distributed, delivered, sold and otherwise placed in the stream of commerce by the Defendants, and/or used at worksites, locations, premises, and/or

13

facilities owned, operated, maintained and/or controlled by the Defendant corporations, and at the direction, control, and supervision of the Defendant corporations, Plaintiff ROBERT J. GILLIS, developed mesothelioma, an asbestos-related disease. He suffered serious personal injuries, endured great pain of body and mind, suffered severe mental anguish and distress, has been and continues to be prevented from transacting his business, has been and continues to be required to undergo medical treatment, care and expense. Further, his next of kin have been deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

## COUNT I

## NEGLIGENCE

## (CONSCIOUS PAIN AND SUFFERING)

60.     Plaintiffs incorporate by reference paragraphs 1 through 59 above as if expressly alleged and set forth herein.

61.     It was the duty of the Defendants to use and exercise reasonable and due care in the manufacture, fabrication, testing, inspection, production, marketing, packaging, contracting, distribution and sale of their asbestos and asbestos-containing products.

62.     It was also the duty of the Defendants to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos-containing products, and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

63.     It was the continuing duty of the Defendants to advise and warn purchasers, consumers, users, and prior purchasers, prior consumers, and prior users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale

14

of their asbestos and asbestos-containing products.

64.    Yet, nevertheless, wholly disregarding the aforesaid duties, the Defendants breached their duties by: (a) failing to warn Plaintiff ROBERT J. GILLIS of the dangers, characteristics, and potentialities of their asbestos-containing products when the Defendants knew or should have known that exposure to their asbestos-containing products would cause disease and injury; (b) failing to warn Plaintiff ROBERT J. GILLIS of the dangers to which he was exposed when they knew or should have known of the dangers; (c) failing to exercise reasonable care to warn Plaintiff ROBERT J. GILLIS of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working with or near or being exposed to their asbestos and asbestos-containing products; (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos and asbestos-containing products; (e) failing to test its asbestos and asbestos-containing products in order to ascertain the extent of danger involved upon exposure thereto; (f) failing to conduct such research as should have been conducted in the exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise Plaintiff ROBERT J. GILLIS of said dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabrication, supply, and/or sale of their asbestos and asbestos-containing products.

15

65.     As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, Plaintiff ROBERT J. GILLIS developed an asbestos-related disease. He suffered and continues to suffer serious personal injuries. He has incurred and will continue to incur substantial medical expenses in connection with the treatment of his asbestos-related disease.

66.     The Defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, Plaintiffs demand judgment against the Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT II

### BREACH OF EXPRESS AND IMPLIED WARRANTIES

67.     Plaintiffs incorporate by reference paragraphs 1 through 66 above as expressly alleged and set forth herein.

68.     Plaintiff ROBERT J. GILLIS is a person whom the Defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, secs. 2-314 and 2-318, as the defendants knew or had reason to know that their asbestos and asbestos-containing products would be used in various industries and that individuals, such as the Plaintiff, would come in contact with such asbestos materials.

69.     The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of the Plaintiff ROBERT J. GILLIS.

16

70.     The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

71.     Plaintiff ROBERT J. GILLIS relied upon the defendants' skill or judgment in selecting suitable products for safe use.

72.     The defendants breached these warranties, in that the asbestos and asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

73.     As a direct and proximate result of the defendants' breach of warranties, Plaintiff ROBERT J. GILLIS an asbestos-related disease. He suffered serious personal injuries, endured and will continue to endure severe pain of body and mind.  He has incurred and will continue to incur substantial medical expenses in connection with the treatment of his asbestos-related disease. Further, his next of kin were deprived of her services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

WHEREFORE, Plaintiffs demand judgment against the defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

## COUNT III

## STRICT LIABILITY OF PREMISES DEFENDANTS DUE TO

## THE ABNORMALLY DANGEROUS ACTIVITIES ON THEIR PREMISES

74.     Plaintiffs repeat and restate all allegations contained in all paragraphs 1 to 73 above as if fully set forth herein.

75.     BOSTON PROPERTIES, INC. is/was the owner/operator of the premises at 200 Clarendon St., Boston, MA 02116 (f/k/a John Hancock Tower) at which Plaintiff ROBERT J. GILLIS worked in approximately the early 1970s.  While working at this location, ROBERT J.

17

GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, drywall installers, carpenters, HVAC workers, insulators, pipefitters, and other similar tradesmen.

76.     BOSTON UNIVERSITY is/was the owner/operator of the premises at 72 E. Concord St., Boston, MA 02118 (a/k/a Boston University School of Medicine) at which Plaintiff ROBERT GILLIS worked in approximately the late-1960s or early-1970s.  While working at this location, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, drywall installers, carpenters, HVAC workers, insulators, pipefitters, and other similar tradesmen.

77.     GLAXOSMITHKLINE LLC is/was the owner/operator of the premises at 101 Possumtown Rd., Piscataway, NJ 08854 at which Plaintiff ROBERT GILLIS worked in approximately the late 1980s.   While working at this location, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, carpenters, HVAC workers, pipefitters, abatement workers and other similar tradesmen.

78.     HARVARD UNIVERSITY is/was the owner and/or operator of the premises at Harvard University at which Plaintiff worked in approximately the late 1980s to early 1990s. While working at this location, ROBERT GILLIS may have been exposed to asbestos from asbestos abatement work that was done at the premises during the time that he worked on site.

79.     HP HOOD is/was the owner and/or operator of a premises at Brigham's Ice Cream at which Plaintiff worked in approximately the early-1970s.  While working at this location, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, drywall installers, carpenters, HVAC

workers, insulators, pipefitters, and other similar tradesmen.

80.     MASS GENERAL BRIGHAM INC. is/was the owner and/or operator of the premises at The Massachusetts General Hospital, 55 Fruit St., Boston MA, at which Plaintiff worked in the late-1960s to early 1970s. While working at this location, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, drywall installers, carpenters, HVAC workers, insulators, pipefitters, and other similar tradesmen.

81.     MASSACHUSETTS INSTITUTE OF TECHNOLOGY is/was the owner and/or operator of the premises at Massachusetts Institute of Technology at 77 Massachusetts Ave. Cambridge, MA, at which Plaintiff worked in approximately the early-1970s and again in the late-1980s. While working at this location in approximately the early-1970s, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, drywall installers, carpenters, HVAC workers, insulators, pipefitters, and other similar tradesmen. While working at this location in approximately the late-1980s, ROBERT GILLIS may have been exposed to asbestos from asbestos abatement work that was done at the premises.

82.     MASSACHUSETTS PORT AUTHORITY is/was the owner and/or operator of the premises at Boston Logan International Airport at 122 Harborside Dr., East Boston, MA at which Plaintiff worked in approximately the early 1980s. While working at this location, during the construction and/or remodel of various airport terminals, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, carpenters, HVAC workers, pipefitters and other similar tradesmen.

83.     UNIVERSITY OF MASSACHUSETTS is/was the owner and/or operator of the

19

premises University of Massachusetts Dartmouth, 285 Old Westport Rd., North Dartmouth, MA, at which Plaintiff worked in approximately the early 1970s. While working at this location, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, carpenters, HVAC workers, pipefitters and other similar tradesmen.

84.     MEMORIAL SLOAN KETTERING CANCER CENTER is/was the owner and/or operator of the premises Memorial Sloan Kettering Cancer Center at 1275 York Ave, New York, NY 10065 at which Plaintiff worked in approximately the mid-1980s. While working at this location, ROBERT GILLIS may have been exposed to asbestos from the work of other trades working in his vicinity including, but not limited to, electricians, carpenters, HVAC workers, pipefitters and other similar tradesmen.

85.     BOSTON PROPERTIES, INC., BOSTON UNIVERSITY, HARVARD UNIVERSITY, HP HOOD, MASS GENERAL BRIGHAM INC., MASSACHUSETTS INSTITUTE OF TECHNOLOGY, MASSACHUSETTS PORT AUTHORITY, and UNIVERSITY OF MASSACHUSETTS collectively referred to hereinafter as "the PREMISES DEFENDANTS."

86.     The PREMISES DEFENDANTS carried on or permitted to have carried on upon their premises, locations, buildings, facilities, worksites, and properties improper and abnormally dangerous activities including accepting delivery, storage, installation, maintenance, repair, work with, use, removal, and abatement of products, materials, machinery and equipment that used, incorporated, contained, and were designed to work with a toxic substance, to wit, asbestos. PREMISES DEFENDANTS also failed to adequately educate, warn, and instruct Plaintiff, concerning adequate and sufficient measures to protect himself from being exposed to asbestos

dust and fibers. These activities and failures were carried on by PREMISES DEFENDANTS themselves, and/or by their employees, agents, and/or contractors acting with PREMISES DEFENDANTS' permission, at their direction, with their knowledge and consent, and/or under their control and supervision.

87.     The PREMISES DEFENDANTS knew, or with the reasonable exercise of care, should have known, that accepting delivery, storage, installation, maintenance, repair, work with, use, removal, and abatement of products, materials, machinery and equipment that used, incorporated, contained, and were designed to work with asbestos, is an abnormally dangerous activity. PREMISES DEFENDANTS further knew, or with the reasonable exercise of care, should have known, that those activities were likely to expose any individuals present at the PREMISES DEFENDANTS' premise (listed above) to asbestos dust and fibers.

88.     At all relevant times, the PREMISES DEFENDANTS had ownership, custody, control, and/or supervision of their premises where asbestos and/or asbestos-containing products were being used, installed, removed or otherwise manipulated.

89.     At all relevant times, Plaintiff was legally permitted to be present at the PREMISES DEFENDANTS' premises.

90.     At all relevant times, the PREMISES DEFENDANTS directed, controlled, and/or supervised the work, tasks and duties of Plaintiff at the PREMISES DEFENDANTS' premises, as well as those of other individuals who worked in his vicinity, including outside contractors and/or invitees.

91.     As a direct and proximate result of Plaintiff's exposure to asbestos dust and fibers originating and released from products, materials, machinery and equipment at the PREMISES DEFENDANTS' premises (as listed above) and as a result of the aforementioned activities,

Plaintiff was caused to contract an asbestos-related disease, namely mesothelioma. Plaintiff ROBERT J. GILLIS has suffered serious personal injuries, has suffered severe emotional distress, has incurred great mental and physical pain and suffering, was prevented from transacting his business, has suffered an impairment in his enjoyment of life, and has incurred great medical expenses. Further, his spouse and next of kin have been deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

WHEREFORE, Plaintiffs demand judgment against the Defendants for a reasonable amount plus statutory interest and costs, and for such other relief as shall be deemed appropriate.

## COUNT IV

### NEGLIGENCE OF PREMISES DEFENDANTS: PREMISES LIABILITY

92.     Plaintiffs repeat and restate all allegations contained in all paragraphs 1 to 91 above as if fully set forth herein.

93.     At all relevant times, PREMISES DEFENDANTS owned, operated, and/or had custody and control over the premises, locations, buildings, facilities, worksites, and properties which constituted the PREMISES DEFENDANTS' premises (as listed in paragraphs 75 to 83).

94.     The PREMISES DEFENDANTS owed all invitees to its premises, which were under its ownership and control, a duty to use due care to keep its premises in a reasonably safe condition and to warn of dangers of which it was aware or reasonably should be aware.

95.     The PREMISES DEFENDANTS used, or permitted the use of asbestos, raw asbestos fibers, and/or asbestos containing products, materials, machinery, and equipment in and at their premises.

96.     The PREMISES DEFENDANTS knew or should have known of the hazardous nature of the asbestos products being delivered, stored, installed, maintained, repaired, worked

with, used, removed, and abated upon and at its premises.

97.      The PREMISES DEFENDANTS failed to adequately educate, warn, and instruct Plaintiff concerning adequate and sufficient measures to protect himself from being exposed to asbestos dust and fibers which originated from and were generated and released at their premises.

98.      The PREMISES DEFENDANTS breached their duty to exercise due care in keeping at its premises reasonably safe to invitees such as Plaintiff.

99.      At all relevant times, the PREMISES DEFENDANTS had ownership, custody, control, and/or supervision of their premises where asbestos was being used.

100.      At all relevant times, Plaintiff was an invitee or licensee or was otherwise legally present at PREMISES DEFENDANTS' premises.

101.      At all relevant times, the PREMISES DEFENDANTS directed, controlled, and/or supervised the work, tasks and duties of Plaintiff as well as those of other individuals who worked in his vicinity at their premises.

102.      The PREMISES DEFENDANTS knew, or with the reasonable exercise of care, should have known that at the time Plaintiff was present, working, and carrying out his duties at the premises he was being exposed to asbestos dust and fibers as a result of the activities described.

103.      As a direct and proximate result of Plaintiff's exposure to asbestos dust and fibers originating and released from products, materials, machinery and equipment at the PREMISES DEFENDANT's premises and as a result of the aforementioned activities, Plaintiff was caused to contract an asbestos-related disease, namely mesothelioma. Plaintiff ROBERT J. GILLIS has suffered serious personal injuries, has suffered severe emotional distress, has incurred great mental and physical pain and suffering, was prevented from transacting his business, has suffered an impairment in his enjoyment of life, and has incurred great medical expenses.

23

WHEREFORE, Plaintiffs demand judgment against the Defendants for a reasonable amount plus statutory interest and costs, and for such other relief as shall be deemed appropriate.

## COUNT V

### LOSS OF CONSORTIUM

104.    The Plaintiffs incorporate by reference paragraphs 1 through 104 above as if expressly alleged and set forth herein.

105.    Plaintiff JUDITH GILLIS is the wife of Plaintiff ROBERT J. GILLIS, having married in or about the year 1968.

106.    As a direct and proximate result of the breach of duty and wrongdoing of the defendants and the resultant injury to Plaintiff ROBERT J. GILLIS as more particularly described in the preceding Counts, Plaintiff JUDITH GILLIS suffered a loss of her right to society and consortium with her spouse and the loss of her spouse's services, guidance, affection, comfort, protection, society, counsel, advice, and companionship, and she has suffered great mental anguish.

WHEREFORE, Plaintiffs demand judgment against the Defendants for a reasonable amount plus statutory interest and costs and for such other relief as shall be appropriate.

///

///

///

///

///

///

///

## DEMAND FOR TRIAL BY JURY

The Plaintiffs hereby demand a trial by jury on each claim asserted or hereafter asserted by the plaintiffs and on each defense asserted or hereafter asserted by the defendants.

Respectfully submitted,
The Plaintiffs,
By their attorneys,

Dated: 9/14/2022

Michael C. Shepard
BBO No. 567842
Erika A. O'Donnell
BBO No. 661534
Michael J. McCann
BBO No. 690542
Giuliana D'Esopo
BBO No. 706138
Shepard Law, P.C.
160 Federal Street, 13th Floor
Boston, MA  02110
(617) 451-9191