UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT J. GILLIS and JUDITH GILLIS, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>PBV Inc., et al. )<br>)<br>Defendants. ) | CIVIL ACTION NO. 22-11733-NMG |

# REPORT AND RECOMMENDATION ON DEFENDANT PBV INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

November 21, 2023

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiffs Robert J. Gillis ("Robert Gillis") and Judith Gillis (collectively, the "Plaintiffs"), each a resident of Massachusetts, originally filed suit in Massachusetts state court against various defendants, asserting numerous state law claims and alleging that the defendants, through their acts and/or omissions, caused plaintiff Robert Gillis to be exposed to asbestos and eventually develop mesothelioma. On October 12, 2022, one of those defendants, John Crane Inc., filed a notice of removal with this court, and on December 22, 2022, the Plaintiffs filed a motion to amend their complaint to include PBV Inc. ("PBV"), an out-of-state entity formerly known as Industry Products Company ("IPC"), and another, as party Defendants.[1] (Mot. Am. Compl. ¶ 2) (Docket No. 185). PBV opposed the Motion, and in its opposition argued that the

---

[1] Following the submission of its Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 243), Industry Products Company filed a notice on August 15, 2023 (Docket No. 334), notifying the court of its name change to PBV Inc.

court lacked personal jurisdiction over it and that such an amendment was futile. (Def. Opp. Mot. Am. Compl. at 1) (Docket No. 191).[2] Following a hearing on the Motion on March 28, 2023, the court allowed the motion to amend but noted that it was "a close call on the issue of futility." (Docket No. 219). On April 3, 2023, the Plaintiffs filed an amended complaint ("Am. Compl.") (Docket No. 222) asserting Negligence (Conscious Pain and Suffering) (Count I); Breach of Express and Implied Warranties (Count II); Strict Liability of Premises Defendants Due to the Abnormally Dangerous Activities on Their Premises (Count III); Negligence of Premises Defendants: Premises Liability (Count IV); and Loss of Consortium (Count V). (Am. Compl. ¶¶ 54-98). In their Amended Complaint, the Plaintiffs named PBV and Copeland Corporation LLC ("Copeland") as additional defendants. (Am. Compl. at 1). On April 18, 2023, PBV, once again contesting personal jurisdiction, filed "Industry Products Company's Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 243), which has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Fed. R. Civ. P. 72(b)(1).

By its Motion to Dismiss, PBV contends that the Plaintiffs' claims against it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because the Plaintiffs have failed to show that PBV's contacts with Massachusetts are sufficient to enable this court to exercise personal jurisdiction over it under the United States Constitution. For all the reasons detailed below, this court finds that the Plaintiffs have not met their "burden of showing that personal jurisdiction is . . . consistent with the constitutional requirements of due process." Motus, LLC v. CarData

---

[2] Citations to page numbers refer to the parties' own page numbering. Citations to CM/ECF page numbers refer to the court's numbering system located at the top right of the page.

Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022).  Therefore, this court recommends to the District Judge to whom this case is assigned that PBV's Motion to Dismiss be ALLOWED.

## II. STATEMENT OF FACTS

### Standard of Review of Record

In a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), "[t]he burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff."  Kuan Chen v. United States Sports Acad., Inc., 956 F.3d 45, 54 (1st Cir. 2020).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under this standard, the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  Id. (quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)).  "To make such a showing, the plaintiff cannot rely solely on conclusory averments but must 'adduce evidence of specific facts.'"  Kuan Chen, 956 F.3d at 54 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

Thus, for the Plaintiffs to meet their burden of establishing personal jurisdiction over PBV in this forum, they must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).  The court will "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts."  Id.  It will "then add to the mix facts put

forward by the defendants, to the extent that they are uncontradicted." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002)) (additional quotations and citation omitted).

Applying this standard to the instant case, the facts relevant to PBV's Motion to Dismiss are as follows.[3]

---

[3] Unless otherwise indicated, the facts are derived from the Plaintiffs' First Amended Complaint ("Am. Compl.") (Docket No. 222); from the Affidavit of Richard Ramer ("Ramer Aff.") attached to defendant PBV Inc.'s Memorandum of Law in Support of Its Motion to Dismiss ("Def. Mem.") (Docket No. 244); and from the Plaintiffs' Memorandum of Law in Opposition to Defendant PBV Inc.'s Motion to Dismiss ("Pls'. Opp.") (Docket No. 260), and the exhibits attached thereto ("Pls'. Ex. _"), which are supported and described by the Declaration of Attorney Erika A. O'Donnell (Docket No. 260-1).

It should be noted that many of the facts presented by the Plaintiffs are drawn from the exhibits to their Opposition, which largely consist of deposition transcript selections in related actions brought in other jurisdictions, in which PBV and/or Copeland have been named as a defendant. The Plaintiffs assign numbers 1 through 10 to the exhibits but alternately label some as letter exhibits (A – G). Of these exhibits, those referenced within this Report and Recommendation will be referred to by their numerical exhibit number and include the following:

(1) Exhibit 1 ("A"): Deposition testimony of Copeland Corporation's Mark Gibson, in Glen Adbun-Nur, et al. v. Air Cold Supply, Inc., et al., Los Angeles County Superior Court No. BC 512237;
(2) Exhibit 3 ("C"): Deposition testimony of Copeland Corporation's Mark Gibson, in Mainwarring v. Air Cold Supply, et al., Los Angeles County Superior Court No. BC 492931;
(3) Exhibit 4 ("D"): Deposition testimony of PBV's Richard Ramer, in Lohmann, et al. v. Aaon, Inc., et al., Alameda County Superior Court No. RG21098862;
(4) Exhibit 5 ("E"): Deposition testimony of PBV's Richard Ramer, in Glen Adbun-Nur, et al. v. Air Cold Supply, Inc., et al., Los Angeles County Superior Court No. BC 512237;
(5) Exhibit 7 ("G"): Deposition testimony of Copeland Corporation's Jim Watt, in Lohmann, et al. v. Aaon, Inc., et al., Alameda County Superior Court No. RG21098862;
(6) Exhibit 9: Deposition testimony of Plaintiff Robert Gillis, in the present matter; and
(7) Exhibit 10: Plaintiffs' personal jurisdiction-related discovery requests, served on PBV on June 1, 2023.

**The Relevant Parties**

Plaintiff Robert Gillis resides in Hanover, MA, with his wife, plaintiff Judith Gillis. (Am. Compl. ¶ 1). The two married in 1968. (Id. ¶ 97). While the Plaintiffs name forty-two (42) separate defendants in their first amended complaint, the relevant parties for the purposes of this Report and Recommendation are Copeland and PBV. Copeland Corporation LLC is "an Indiana [c]orporation with its principal place of business in Rushville, IN[.]" (Id. ¶ 15). PBV Inc. is an "an Ohio corporation with its principal place of business located in Ohio[.]" (Id. ¶ 26).

**Robert Gillis's Alleged Exposure to Asbestos**

Over the course of his lifetime, Robert Gillis is alleged to have been exposed to asbestos dust and fibers through, in part, various jobs he held in which he serviced products, building systems, machinery, and other apparatuses, some of which are alleged to have contained asbestos. (See generally Am. Compl. ¶ 48). As a "direct and proximate" result of this prolonged exposure, it is alleged that he developed mesothelioma, a form of cancer with which he was diagnosed in 2022. (Id. ¶ 53; Pls'. Ex. 9 at 539-41). With respect to PBV and Copeland, it is the Plaintiffs' position that Robert Gillis repeatedly encountered, serviced, installed, and/or repaired Copeland semi-hermetic compressors, which included asbestos-containing compressor gaskets manufactured by PBV, as part of his work in Massachusetts as a pipefitter and HVAC-worker for Harris Environmental Systems ("Harris"). (Am. Compl. ¶ 48; Pls'. Ex. 9 at 175, 221, 334-35, 338, 492-94). The equipment which Robert Gillis installed as part of his work for Harris had been purchased by Harris "directly from the manufacturer . . . Copeland Corporation." (Pls'. Ex. 9 at 334).

**PBV's Relationship with Copeland**

Beginning as early as 1966, PBV served as a major supplier for Copeland's products, and it collaborated with Copeland to design and manufacture gaskets for use in compressors manufactured by Copeland. (Pls'. Ex. 1 at 145-46; Ex. 4 at 25-26; Ex. 5 at 16; Ex. 7 at 200-01). Copeland understood PBV to be the only supplier of gaskets for its compressors. (Pls'. Ex. 1 at 146). In the years before 1991, the PBV-manufactured gaskets and replacement gaskets which Copeland used in its compressors contained asbestos. (Id. at 52, 105-06). PBV purchased the asbestos material used to create these gaskets from separate suppliers and cut the material into "specific shapes and patterns" designated by Copeland before then selling the finished gaskets to Copeland. (Id. at 146; Ex. 4 at 32, 49; Ex. 7 at 200-01). Copeland established a distribution network for its compressors and replacement parts, and it used authorized wholesalers located throughout the United States to distribute its products. (Id. at 36-37). The only way an individual could purchase authorized Copeland replacement parts was by purchasing those parts from one of Copeland's authorized wholesalers. (Id. at 37). Copeland also sold gasket kits, which included PBV's asbestos-containing gaskets, to be used as replacements for any of the gaskets present in its compressors. (Pls'. Ex. 3 at 196-97, 216-17). PBV manufactured these replacement gaskets for Copeland, and Copeland sold the replacement gasket kits to authorized wholesalers who, in turn, sold them to contractors who serviced Copeland compressors. (Id.).

**Robert Gillis's Alleged Exposure to Asbestos Gaskets Serviced in Massachusetts**

From approximately 1968 to 2008, Robert Gillis worked for Harris Environmental Systems ("Harris") as a pipefitter and HVAC-worker and was responsible for, among other duties, installing and servicing compressors manufactured by Copeland in environmental rooms located

at facilities throughout Massachusetts and elsewhere. (Am. Compl. ¶ 48; Pls'. Ex. 9 at 139-46). As part of his responsibilities with Harris, Robert Gillis, at times, removed and replaced gaskets located in these compressors through use of a wire brush and scraper, and it is alleged that this gasket removal and replacement process exposed him to asbestos. (Pls'. Opp. at 8; Pls'. Ex. 9 at 505-07; see also Am. Compl. ¶ 48). Even though Robert Gillis remains unable to identify the manufacturer of the gaskets he replaced, the Plaintiffs argue that, given PBV's "exclusive relationship with Copeland" as the supplier of these gaskets and Copeland's national distribution network, it can be inferred that the compressor gaskets which Robert Gillis encountered in Massachusetts are those which "IPC manufactured, marketed, sold, and distributed." (Pls'. Opp. at 8; Pls'. Ex. 9 at 340). They further contend that PBV, "in partnership with Copeland, intended to, and did, market and sell compressors with asbestos-containing gaskets and replacement kits with asbestos-containing gaskets in Massachusetts[.]" (Pls'. Opp. at 9).

Despite these contentions, the record fails to establish that PBV itself had any role in directing its gaskets into specific state markets, including Massachusetts, or that it engaged in any marketing within the forum state. Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III. ANALYSIS

#### A. Personal Jurisdiction -- Generally

PBV has moved to dismiss the Plaintiffs' claims against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). In order to exercise personal jurisdiction over a defendant, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle

v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).  Here, PBV relies solely on constitutional grounds to challenge personal jurisdiction.  (See Def. Mem. at 3-4).  "If a defendant limits its jurisdictional objection to either statutory grounds or constitutional grounds, the court need only consider those particular grounds."  Motus, 23 F.4th at 122.  For that reason, this court considers only the constitutional analysis.

"The Due Process Clause dictates that, as a prerequisite to the exercise of personal jurisdiction, an out-of-state defendant must 'have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  Kuan Chen, 956 F.3d at 54-55 (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)) (additional quotations and citation omitted).  Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum."  Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999).  "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant [itself] that create a substantial connection with the forum State."  Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty., 480 U.S. 102, 109, 107 S. Ct. 1026, 1030, 94 L. Ed. 2d 92 (1987) (quotations and citations omitted).

"Personal jurisdiction may be either general or specific."  Cossaboon v. Maine Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010).  Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts."  Id. (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).  "General jurisdiction broadly subjects the defendant to suit in the forum state's courts 'in respect to all matters, even those that are unrelated to the

[8]

defendant's contacts with the forum.'" Id. (quoting Phillips Exeter Acad., 196 F.3d at 288). Thus, a court may assert general jurisdiction over an out-of-state defendant only where the defendant's activities within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (quoting Int'l Shoe, 326 U.S. at 318, 66 S. Ct. at 159).

In the present matter, PBV contends that the Plaintiffs have failed to make the requisite showing necessary to establish that its contacts with Massachusetts are sufficient to satisfy either standard. (Def. Mem. at 4-7). This court agrees. The record establishes that PBV is not incorporated in Massachusetts, has no place of business here, and did not target Massachusetts, specifically, for its products. At most, PBV collaborated with Copeland with respect to the design and manufacture of the gaskets, but all of those contacts took place in Ohio. The marketing and sale of the finished products, including the sales in Massachusetts, were controlled by Copeland. Thus, for the reasons that follow, this court finds that PBV's contacts with Massachusetts are insufficient to establish this court's assertion of general or specific personal jurisdiction over it.

B. **General Jurisdiction**

The Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." Daimler AG v. Bauman, 571 U.S. 117, 137, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Goodyear,

564 U.S. at 924, 131 S. Ct. at 2853-54.  Accordingly, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction" with respect to a corporation. Daimler, 571 U.S. at 137, 134 S. Ct. at 760 (quotations, punctuation and citations omitted). Additionally, the Supreme Court has left open "the possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." Id. at 139 n.19, 134 S. Ct. at 761 n.19 (internal citation omitted).

Here, the Plaintiffs are not asserting that PBV is subject to general jurisdiction in Massachusetts.  It is undisputed that PBV is headquartered and has its principal place of business in Ohio.  (Am. Compl. ¶ 26; Ramer Aff. ¶ 3).  For purposes of general jurisdiction, PBV is "at home" in Ohio.  See Kuan Chen, 956 F.3d at 57 (explaining that "[t]he paradigmatic examples of locales in which a defendant corporation is considered at home are its state of incorporation and the state that houses its principal place of business.").

Furthermore, the record contains no facts to show or suggest that PBV's affiliations with Massachusetts are "'so continuous and systematic as to render [it] essentially at home in the forum state[,]' *i.e.*, comparable to a domestic enterprise in that State." Daimler, 571 U.S. at 133 n.11, 134 S. Ct. at 758 n.11 (quoting Goodyear, 564 U.S. at 919, 131 S. Ct. at 2851) (internal citation omitted).  Rather, the undisputed evidence shows that PBV has never had any physical presence or operations in Massachusetts, and that all of PBV's gasket fabrication activities for Copeland took place within Ohio.  (Ramer Aff. ¶¶ 7-11).  Copeland then sold the gaskets, either as part of its compressors or in replacement gasket kits, in markets throughout the United States via its own national wholesale distribution network.  (Pls'. Ex. 1 at 36-37; Ex. 3 at 216-17).

These wholesalers, in turn, sold the products to contractors. (Id.). In sum, there is no evidence of "continuous and systematic" contacts with Massachusetts which would subject PBV to the general jurisdiction of a court in Massachusetts. See Swiss Am. Bank, 274 F.3d at 620 (collecting cases where contacts found to be insufficient for general jurisdiction).

### C. Specific Personal Jurisdiction

"Where the defendant is not subject to general jurisdiction, due process may still permit a district court to exercise specific jurisdiction." Venmill Indus., Inc. v. ELM, Inc., 100 F. Supp. 3d 59, 67 (D. Mass. 2015). As the First Circuit has explained:

> [t]he Due Process Clause imposes three requirements for exercising specific jurisdiction over out-of-forum defendants. First, the plaintiff's claim must directly arise from or relate to the defendant's activities in the forum. See Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018). Second, the defendant's forum-state contacts must "represent a purposeful availment of the privilege of conducting activities in that state." Id. Third, the exercise of specific jurisdiction in the forum must be reasonable under the circumstances. See id. "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." Id.

Kuan Chen, 956 F.3d at 59. Here, as with general jurisdiction, the record does not establish a basis for a court to confer specific personal jurisdiction over PBV.

#### Relatedness

The relatedness prong of the specific jurisdictional analysis requires the plaintiff to demonstrate that its "cause of action either arises directly out of, or is related to, the defendant's forum-based contacts." Knox v. MetalForming, Inc., 914 F.3d 685, 690-91 (1st Cir. 2019) (quoting Harlow v. Children's Hosp., 432 F.3d 50, 60-61 (1st Cir. 2005)) (additional citation omitted). "This flexible, relaxed standard, requires only that the claim have a 'demonstrable nexus' to the defendant's forum contacts[.]" Id. at 691 (quoting Mass. Sch. of

[11]

Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)) (internal quotations, citations and punctuation omitted).  Despite the flexibility of this standard, the relatedness prong "is not an open door" but rather one which is "closely read, and . . . requires a showing of a material connection"; the exercise of personal jurisdiction is improper if the "'connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect.'"  Harlow, 432 F.3d at 61 (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 690 F.2d 1080, 1089 (1st Cir. 1992)).  "Determination of whether a defendant's contacts with a forum satisfy the relatedness inquiry requires consideration of the nature of a plaintiff's underlying cause of action."  Lewis v. Dimeo Constr. Co., No. 14-CV-10492-IT, 2015 WL 3407605, at *3 (D. Mass. May 27, 2015).

In the instant case, while the Plaintiffs have put forth evidence that their injuries were a result of Robert Gillis' contacts with Massachusetts, they have not established that they arose out of PBV's contacts with Massachusetts.  At Copeland's request, and as part of PBV's manufacturing process in Ohio, PBV bought "raw asbestos gasket material," cut the material to "specific shapes and patterns" and then later sold the finished gaskets to Copeland for use in Copeland's compressors.  (Pls'. Ex. 1 at 146; see also Ramer Aff. ¶ 4-6).  Copeland then distributed its compressors and gasket replacement kits to its own authorized wholesalers located in different markets throughout the United States.  (Pls'. Ex. 1 at 36-37; Ex. 3 at 216-17).  These wholesalers, in turn, sold the products to contractors.  (Id.).

While Plaintiffs repeatedly assert that there was a very close relationship between Copeland and PBV with respect to the specifications and design of the gaskets, there is no indication in the record that PBV had any involvement in the distribution of the gaskets, much

[12]

less any involvement with sales in Massachusetts.  (Pls'. Opp. at 1-2, 4).  Therefore, the Plaintiffs have not satisfied the relatedness requirement of specific jurisdiction.  See D.S. Brown Co. v. White-Schiavone, JV, 537 F. Supp. 3d 36, 43-44 (D. Mass. 2021) (where defendant manufactured product in Texas, shipped it to plaintiff in Ohio, and plaintiff then forwarded the product to Massachusetts, the "manufacture and sale of the purportedly defective [product] implicates Texas and Ohio but not Massachusetts" – manufacturer's conduct was not "related" to Massachusetts for specific jurisdiction purposes).  "Thus, it cannot be said that Plaintiffs' claims arise out of or relate to [PBV's] activities in Massachusetts where none exist."  Newman v. European Aeronautic Defence & Space Co. EADS N.V., No. 09-CV-10138-DJC, 2011 WL 2413792, at *6 (D. Mass. June 16, 2011) (court declines to find relatedness where one of defendant's airplanes, manufactured in France, later crashed in Massachusetts; after selling the plane in France, the defendant had not been involved in any subsequent transactions with respect to the plane, including those "transactions that caused it to be operated in Massachusetts").

Purposeful Availment

Here, the facts also fall short of satisfying purposeful availment, the second prong of this conjunctive, tripartite analysis.  Purposeful availment is met when the plaintiff demonstrates that the defendant "has purposefully availed 'itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws.'"  Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958)) (punctuation omitted).  This "requirement guarantees that a defendant will not be subjected to the exercise of jurisdiction based solely on

'random, isolated or fortuitous contacts with the forum state.'" Baskin-Robbins, 825 F.3d at 36 (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007)) (additional quotations and citation omitted). It further "ensures that a defendant will not be swept within a state's jurisdictional reach due solely to the 'unilateral activity of another party or a third person.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)) (additional citation omitted).

"[T]he two cornerstones of purposeful availment are voluntariness and foreseeability." Kuan Chen, 956 F.3d at 59 (additional quotations and citations omitted). "[V]oluntariness demands that the defendant's contacts with the forum result proximately from its own actions." Id. Foreseeability requires that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Id. (quoting Burger King, 471 U.S. at 474, 105 S. Ct. at 2183) (alteration in original) (additional citation omitted).

In the instant case, the Plaintiffs' claim of personal jurisdiction over PBV is based on a "stream of commerce theory." This theory recognizes that personal jurisdiction may be exercised over a defendant who has "deliver[ed] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980). "The Supreme Court considered the interplay of stream of commerce and purposeful availment in Asahi[]" where, "[i]n a plurality opinion, Justice O'Connor held that a defendant's placement of a product into the stream of commerce with the awareness that it may eventually end up in a forum state, without more, is insufficient to show purposeful availment." Costa v.

[14]

FCA US LLC, 542 F. Supp. 3d 83, 94 (D. Mass. 2021) (citing Asahi, 480 U.S. at 112, 107 S. Ct. at 1032).

This "stream of commerce plus" standard "requires that a plaintiff allege additional conduct of the defendant indicating an intent or purpose to serve the market in the forum State, beyond simply placing a product in the stream of commerce, to satisfy the purposeful availment requirement based on a stream of commerce theory." Id. (internal punctuation, quotations and citation omitted). Justice O'Connor provided examples of such "plus" factors, including "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi, 480 U.S. at 112, 107 S. Ct. at 1032 (plurality opinion). Importantly, "Courts in this circuit have consistently (and recently) held that plaintiffs cannot establish purposeful availment under a stream of commerce theory when they do not allege sufficient plus factors." Costa, 542 F. Supp. 3d at 95 (and cases cited). Here, the Plaintiffs have not met this requirement.

The record reflects that any contacts which PBV had with Massachusetts were indirect, involuntary, and certainly not purposeful. Even accepting Plaintiffs' characterization of the relationship between PBV and Copeland as being a "long-running partnership," there is no evidence that PBV designed its gaskets for placement in the Massachusetts market, advertised within Massachusetts, or established support channels to accommodate potential customers within Massachusetts. (Pls'. Ex. 4 at 30). Nor is there evidence to support a theory that PBV played a role in selecting, or helping to select, where Copeland distributed the replacement

gasket kits or the compressors within which its products were incorporated, or that PBV had an independent sales presence in Massachusetts. (See Ramer Aff. ¶¶ 7-10).[4] PBV's role ended after its gaskets had been manufactured and sold to Copeland, and the record shows PBV as several steps removed from deciding in which markets its gaskets, or the compressors in which they were incorporated, were sold.

Knox, 914 F.3d 685 (1st Cir. 2019), on which the Plaintiffs rely, does not compel a different result. (See Pls'. Opp. at 17). In Knox, the court exercised personal jurisdiction over Schechtl, a metal-bending machine manufacturer based in Germany, by searching for the existence of "something more" to support a stream of commerce "plus" theory. 914 F.3d at 691-92 (quoting Plixer, 905 F.3d at 10). The fact that Schechtl had sold its machines in the U.S. market through an independent distribution company, had "individually approved and manufactured according to purchaser-provided specifications each of the nearly fifty machines it sent to Massachusetts purchasers[,]" had maintained an "ongoing relationship with its in-forum purchasers[,]" and had required that the distribution company include instructions with each purchased machine, notifying the end user to "contact Schechtl directly" for customer service-related inquiries or to receive replacement parts, satisfied this requirement. Id. at 687-88, 692-93. Here, in contrast, there is no evidence of PBV's continued involvement once it sold the gaskets to Copeland in Ohio. Since there is no "plus" factor, "'mere awareness' that a product may end up in the forum state does not constitute 'purposeful availment[.]'" Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992) (citing Asahi, 480 U.S. at 112, 107 S. Ct. at

---

[4] While Plaintiffs have provided a copy of a directory of Copeland Wholesalers which includes various wholesalers in Massachusetts, there is no evidence that PBV maintained its own network of distributors in Massachusetts. (Pls' Ex. 1 at CM/ECF Pages 39, 48 of 60).

[16]

1032).  Plaintiffs have failed to establish that PBV's "contacts with the forum result proximately from its own actions" and were voluntary.  Kuan Chen, 956 F.3d at 59.

Similarly, the Plaintiffs have not established that PBV's conduct satisfies the foreseeability requirement of purposeful availment.  Any bare assertion that the products could have ended up in Massachusetts through Copeland's distribution network is insufficient.

> The foreseeability necessary for the assertion of jurisdiction is not just the foreseeability that another party might—or even likely will—sell the nonresident's products in a particular State, but importantly is rather the foreseeability to the defendant that its own actions may provide a valid basis—the necessary "minimum contacts"—to subject it to the forum's laws and judicial authority.

Preferred Mut. Ins. Co. v. Stadler Form Aktiengesellschaft, 308 F. Supp. 3d 463, 470 (D. Mass. 2018) (declining to extend personal jurisdiction over a defendant who had "placed its product into the stream of commerce" by selling it to another party, even where the defendant was aware that its product would likely reach Massachusetts because of the other party's "significant sales" there).  The court cannot exercise specific jurisdiction over PBV.

### Reasonableness

For the reasons stated above, the Plaintiffs have failed to satisfy the "relatedness" or "purposeful availment" requirement for specific jurisdiction.  Therefore, it is unnecessary at this time to address whether the exercise of personal jurisdiction over PBV would be reasonable under the circumstances presented in this matter.  See Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 6 n.5 (1st Cir. 2016) (declining to consider the reasonableness prong of the specific personal jurisdiction prong where the plaintiff had failed to satisfy the purposeful availment prong).  Accordingly, this court recommends that defendant PBV's Motion to Dismiss for lack of personal jurisdiction be allowed.

[17]

### D. Jurisdictional Discovery

In their opposition, the Plaintiffs request jurisdictional discovery so that "additional information concerning [PBV's] contacts with Massachusetts and with Copeland," can be further probed. (Pls'. Opp. at 19). Attached as Exhibit 10 to their Opposition, the Plaintiffs provide a copy of the forty-six (46) pages of personal jurisdiction-related discovery, requested in the form of Interrogatories, Requests for Admission, Requests for Production, and a Notice of Deposition, that they served on PBV on June 1, 2023. (See generally Pls'. Ex. 10).

While a plaintiff may "be entitled to a modicum of jurisdictional discovery" if such plaintiff "makes out a colorable case for the existence of *in personam* jurisdiction" and "present[s] facts to the court which show why jurisdiction would be found if discovery were permitted," it is well-settled that courts have broad discretion in choosing whether to allow such discovery. Swiss Am. Bank, 274 F.3d at 625-27 (additional citations omitted).

Here, no such facts have been shown, and this court recommends that the Plaintiffs' request for jurisdictional discovery be denied. The Plaintiffs have already offered into evidence multiple deposition transcripts of Copeland corporate representatives, the subject of which depositions include, in part, PBV's relationship with Copeland and its role as a gasket manufacturer, the location and extent of PBV's manufacturing operations, and its extensive collaboration with Copeland regarding gasket development. (See generally Pls'. Exs. 1, 3, 7). The Plaintiffs have also offered into the record a deposition transcript of plaintiff Robert Gillis and deposition transcripts of Richard Ramer, PBV's current Special Projects Administrator and formerly its Plant Superintendent, Plant Manager, and Director of Purchasing and Planning, an experienced and knowledgeable corporate representative employed by PBV from February of

1980 to November 1994, and then again from October of 1995 up until the present time. (See generally Pls'. Exs. 4, 5, 9; see also Ramer Aff. ¶ 2). PBV, in turn, has already provided evidence relevant to jurisdiction in the form of an affidavit from Richard Ramer. (See generally Ramer Aff.). Together, this extensive evidence has failed to establish PBV's alleged contacts with Massachusetts, and it is unlikely that any additional evidence bearing on PBV's potential forum-state contacts with Massachusetts would be uncovered, let alone dispositive to jurisdiction, if the court allowed jurisdictional discovery. Therefore, any jurisdictional discovery allowed by this court is unlikely to vitiate many of the "uncontested facts" already present in the record. Costa, 542 F. Supp. 3d at 96-97 (denying the plaintiffs' request for jurisdictional discovery were the court found it unlikely that jurisdictional discovery would bear on the "purposeful availment calculus."); see also D.S. Brown Co., 537 F. Supp. 3d at 44 (refusing to permit jurisdictional discovery where the plaintiff had not presented sufficient facts during "extensive litigation").

## IV. CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that "Industry Products Company's Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 243) be ALLOWED.[5]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this court within 14 days after being served with this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which the objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).